**M & N MEAT COMPANY, a corporation, t/d/b/a M & N Meat Company, a corporation, Plaintiff,**

v.

**AMERICAN BONELESS BEEF CORPORATION, a corporation, Defendant.**

**Civ. A. No. 73–757.**

United States District Court,
W. D. Pennsylvania.

Aug. 28, 1974.

Harry J. Gruener, Litman, Litman, Harris & Specter, Pittsburgh, Pa., for plaintiff.

Jon L. Friedman, Friedman, Friedman & Weisman, Pittsburgh, Pa., for defendant.

## MEMORANDUM AND ORDER

SNYDER, District Judge.

This Court is called upon to decide in a diversity case, the meaning and application of the Pennsylvania "Long Arm" Statute (Act of November 15, 1972, effective 90 days thereafter, 42 Pa. S. § 8301 et seq.) in a factual situation not heretofore acted upon by the Pennsylvania Supreme Court. A default judgment had been entered for the Plaintiff which this Court set aside by an Order entered May 2, 1974.

From the Affidavits as filed and after an Evidentiary Hearing, we determine that Hess-Stephenson Co., a meat broker in Chicago, contacted American Boneless Beef Corporation (American) in Massachusetts by telephone to determine if certain beef, then in New York, was for sale. Finding that it was, Hess-Stephenson telephoned M & N Meat Company (M & N) in Pittsburgh and confirmation was given. American delivered the first portion of the order and was paid the sum of $19,080.00. The remaining portion of the order was not delivered, and it is for damages due to American's failure to make such delivery that this action is brought.

Service of the Complaint upon American was accomplished by (1) sending a copy to the Secretary of the Commonwealth, and (2) by sending a copy by certified mail to American's place of business in Massachusetts, allegedly pursuant to 42 Pa. S. § 8307.[1] This latter mailing was returned "unclaimed". M & N then caused a judgment by default to be entered in the sum of $32,000.00, with interest at 6% per annum and costs, and the attorney for M & N notified American of the entry of the judgment and demanded payment. American promptly filed a "Motion to Set Aside the Entry of Default and for Stay of Proceedings to Enforce Judgment" on the ground that this Court lacked jurisdiction over its person, and thus, the judgment was invalid by reason of defective service. This Court granted a stay of execution on the judgment and

---

1. 42 Pa. S. § 8307 provides:

"Process directed to persons under this Chapter shall be served, by the officer to whom such process shall be directed, upon the Department of State, by sending by registered or certified mail, postage prepaid, a true and attested copy of such process, with the fee required by law, and by sending to the defendant, by registered or certified mail, postage prepaid, a true and attested copy thereof, with an endorsement thereon of the service upon the Department of State, addressed to such defendant at his last known address. The Department of State shall keep a record of the day and hour of the service of such process on it. The registered or certified mail return receipt of the Department of State and of such defendant shall be attached to and made a part of the return of service of such process, except that if the defendant refuses to accept the notice mailed, or cannot be found at his last known address, the registered or certified mail return receipt or other evidence of such facts shall be attached to and made a part of the return and shall constitute sufficient service under the provisions of this section. The fee paid by the plaintiff to the Department of State at the time of the service shall be taxed as costs to the plaintiff, if he prevails in the action necessitating the service of the process."

judgment was subsequently vacated on the grounds of "mistake or excusable neglect" under Rule 60(b) of the Federal Rules of Civil Procedure. American then filed a "Motion to Dismiss" alleging that it was and is not subject to the jurisdiction of this Court.

American filed with this Motion an Affidavit of a corporate officer setting forth that American had not performed any act in the Commonwealth of Pennsylvania for the purpose of realizing pecuniary gain or with the intention of initiating a series of such acts; had not shipped any merchandise, directly or indirectly, in or through the Commonwealth of Pennsylvania; was not now and never had been engaged in any business within the Commonwealth of Pennsylvania; and did not now and never had owned, used or possessed any real property situate within the Commonwealth of Pennsylvania.

M & N filed an opposing Affidavit which set forth that on July 13, 1973, Hess-Stephenson telephoned M & N in Pittsburgh and offered beef for sale. M & N agreed to purchase three loads of beef and the sale was confirmed by Hess-Stephenson in writing. At the direction of M & N, American shipped the first load of beef to Fred's Frozen Foods in Nobles, Indiana and to Ocoma Foods in Humboldt, Tennessee. American invoiced M & N, who mailed their check from Pittsburgh to American in full payment for the delivered beef. When American failed to deliver the meat covered by the remaining written confirmation, suit was brought for $36,000.00, representing the increased cost at which M & N procured an equal amount of beef. It is noted that the confirmation by Hess-Stephenson was for orders f.o.b. Chicago, f.o.b. Boston, and f.o.b. New York.

The applicable Pennsylvania "Long Arm" Statute provides in relevant part as follows:

"§ 8309. *Acts affecting jurisdiction*

(a) General rule.—Any of the following shall constitute 'doing business' for the purposes of this chapter:

(1) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

(2) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

(3) The shipping of merchandise directly or indirectly into or through this Commonwealth.

(4) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by the Commonwealth or any of its agencies.

(5) The ownership, use or possession of any real property situate within this Commonwealth.

(b) *Exercise of full constitutional power over foreign corporation.*—In addition to the provisions of subsection (a) of this section the jurisdiction and venue of courts of the Commonwealth shall extend to all foreign corporations and the powers exercised by them to the fullest extent allowed under the Constitution of the United States." (42 Pa. S. § 8309)

The United States Supreme Court has held in the landmark cases of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), that due process could be accommodated by strict maintenance of traditional notions of "fair play and substantial justice" in determining the sufficiency of the "minimum contacts" of a foreign corporation to the forum State. Pennsylvania's "Long Arm" Statute, as it has evolved over the years, evinces a clear intention on the part of the Legislature to extend jurisdiction over foreign corporations to the

"fullest extent allowed under the Constitution of the United States." Gorso v. Bell Equipment Corporation, 476 F.2d 1216 (3rd Cir. 1973). The original Statute required a foreign corporation to have done business in the forum or to have done a single act or series of acts for the purpose of obtaining pecuniary gain, and was amended (1) in 1968 to embrace situations when foreign corporations do no more than send shipments of merchandise directly or indirectly into the Commonwealth, and (2) in 1972 when jurisdiction was broadened to the fullest possible exercise of constitutional powers.

The Pennsylvania Superior Court recently addressed itself to the 1972 Amendment in the case of Proctor & Schwartz, Inc. v. Cleve. L. Co., 228 Pa. Super. 12, 323 A.2d 11 (1974), which involved a non-resident corporate defendant sued for the purchase price of material. In the opinion entered in the case, Judge Jacobs speaking for the Court held: (at pp. 17–18, 323 A.2d at p. 14)

". . . Under this section [8309] those contacts sufficient to satisfy the constitutional requirements of due process are also sufficient to satisfy the 'doing business' requirement of Pennsylvania law. Thus, for purposes of in personam jurisdiction over unregistered foreign corporations the evolution of the Pennsylvania 'long arm' statute has now become coexistent with the evolution of substantive jurisdictional due process as expressed by the United States Supreme Court."

The Court in *Proctor* set forth certain guidelines to aid in the factual analysis in determining whether the requisite "minimum contacts" are present in a given case: (at p. 19, 323 A.2d at p. 15)

". . . First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. Hanson v. Denckla, *supra*. Secondly, the cause of action must arise from defendant's activities within the forum state. *See*

Southern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374 (6th Cir. 1968); Electric Regulator Corp.. v. Sterling Extruder Corp., 280 F.Supp. 550 (D. Conn.1968). Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable. International Shoe Co. v. Washington, *supra*; ·see Southern Mach. Co. v. Mohasco Indus., Inc., *supra;* see also In-Flight Devices Corp. v. Van Dusen Air, Inc., 466 F.2d 220 (6th Cir. 1972); Kourkene v. American BBR, Inc., 313 F.2d 769 (9th Cir. 1963)."

The Court then held the defendant corporation had, by its activities within Pennsylvania, subjected itself to the jurisdiction of the Pennsylvania courts, and Judge Jacobs gave the following warning: (at p. 19, 323 A.2d at p. 15)

". . . When obligations entered into by a foreign corporation have a realistic economic impact on the commerce of this Commonwealth and where the defendant should reasonably have foreseen that the transaction would have consequences in this Commonwealth the defendant has purposefully availed itself of the privilege of *acting within the Commonwealth.* See Southern Mach. Co. v. Mohasco Indus., Inc., *supra; cf.* Royce and Mason, Non-Resident Jurisdiction in Business Litigation, 53 Chi.B.R. 100 (1971)."

Clearly in the instant case American, through the broker, Hess-Stephenson, could reasonably foresee that its transactions would have realistic economic impact on the commerce of Pennsylvania.

American in its brief attempted to distinguish the *Proctor & Schwartz* case by noting that the contract there was made in Pennsylvania with both parties agreeing to be bound by Pennsylvania law, whereas, in the instant case, it is alleged that the contract was not executed in Pennsylvania, but rather, was made in either Massachusetts or Illinois.

They cite to the Court the cases of Millar Bros. & Co. v. Armour and Company, 144 F.Supp. 857 (E.D.Pa.1956) and Linn v. Employers Reinsurance Corporation, 392 Pa. 58, 139 A.2d 638 (1958), which we find distinguishable. In *Millar*, Hess-Stephenson was also involved in negotiating the contract between the parties. The Court found that the contract was accepted when written confirmation of the sale was sent from Chicago to the plaintiff in Philadelphia, and that, therefore, the contract was made in Illinois. This fact, however, did not result in a successful challenge to the Court's jurisdiction over the defendant, and the case was decided on the merits by applying Illinois law. In *Linn*, an offer to place contracts for reissuance of certain risks undertaken by another insurance company was accepted by telephone and the Court held (contrary to the position taken by Professor Williston and the Restatement of Contracts, as therein cited, that the place of the making of a contract over the telephone is where the acceptance is heard, and not where it is spoken) that the State where the contract is made is the State from which the acceptance is spoken. Under the holding in *Linn* the role Hess-Stephenson played in the phone conversations which resulted in the contract between the parties was determined to be controlling, i. e., that when a principal authorizes an agent to accept an offer made by a third party, the place of contracting is where the agent accepts. We find that neither of these two cases relied on by the Defendant serves to derogate from the reasoning of the Superior Court in *Proctor & Schwartz*.

■ Thus, under Pennsylvania law, jurisdiction attaches where the defendant corporation purposefully avails itself of the privilege of acting within the forum State, invoking the benefits and protections of its law. There can be no question that the contract made between M & N and American had a substantial economic impact on the commerce of the Commonwealth, and this is especially so when made during a period of a severe meat shortage. The Defendant, because of its experience, was well aware of this. Harry Summers, the broker and owner of the Defendant corporation, stated at the Evidentiary Hearing on direct examination that he ordinarily would not make a contract such as the one in question, because he had his own regular commercial outlet for American's meat. The prices which could be obtained from the Pennsylvania corporation were attractive at that time, and thus, he was willing to divert part of his available supply to the Pittsburgh based M & N Meat Company. Mr. Summers testified as follows: (Tr. pp. 36, 37–38)

"Q  Do you do much business with one particular company or do you do a lot of business with many, many different companies?

A  Ninety five per cent of my business is with one account.

Q  And where is that account located?

A  In Missouri.

Q  And you buy and sell for them or just buy or just sell?

A  I sell to them.

Q  You sell meat of this type to them?

A  That's correct.

\*    \*    \*    \*    \*    \*

Q  . . . What percentage of your business is taken up with this one particular company located in Missouri?

A  Like I said, approximately 95%.

Q  Now, the circumstances that surround this transaction on July the 13th that Hess-Stephenson had called you about, was this an unusual circumstance?

A  Yes, it was. This was my top stated price for the product picked up at the freezer, and

that's the only reason I sold it to him, because I would have use for it myself, selling it to my own account."

The economic impact on the commerce of Pennsylvania of such a transaction is clear, and the first prerequisite for the "Long Arm" Statute jurisdiction is met.

■ The next prerequisite for such jurisdiction is that the Defendant's activities within the forum State must give rise to the cause of action. As the Superior Court noted in the *Proctor & Schwartz* Opinion (228 Pa.Super. at p. 20, 323 A.2d at p. 15), "The mere fact that the defendant availed itself of the privilege of doing business in Pennsylvania will not support a cause of action which is unrelated to the defendant's activities in this state". The Court found that the contract in that case was made in Pennsylvania and, therefore, the test was met. As to the contract between M & N and American, as hereinabove discussed, Millar Bros. & Co. v. Armour and Company is a precedent in this State that such a contract was made in the state where confirmation originated, that is, Illinois. Notwithstanding this fact, however, one shipment of meat was brought into Pennsylvania in our case pursuant to the agreement and a total of $19,080 was paid by the Plaintiff corporation to the Defendant corporation. Thus, under 42 Pa. S. § 8309(a)(2), one act was performed for the purpose of realizing pecuniary benefit with the intention of initiating a series of such acts, or, the later two shipments. Also, under 42 Pa. S. § 8309(a)(3), this act constituted the "shipping of merchandise . . . indirectly into . . . this Commonwealth" and the failure to make available the additional two loads of beef for shipment into the Commonwealth in conformity with the contract gave rise

to the cause of action in Pennsylvania. Aquarium Pharm., Inc. v. Industrial Press & Pack., Inc., 358 F.Supp. 441 (E.D.Pa.1973). The jurisdictional relationship is therefore established.

■ Finally, the Court must be satisfied that under all of the circumstances there is no abuse of fairness or substantial justice by the exercise of "long arm" jurisdiction in this case. It cannot be denied that under the earlier long arm statutes, the Motion to Dismiss filed by the Defendant, American, would probably have been sustained under these circumstances. But, as has been observed by numerous courts in the Commonwealth, both at the Federal and State levels, the public policy of Pennsylvania's Legislature is to extend in personam jurisdiction to the fullest perimeters consistent with the principles of due process. Gorso v. Bell Equipment Corporation, *supra*; Aquarium Pharm., Inc. v. Industrial Press & Pack., Inc., *supra*, and the cases cited therein; Image Ten, Inc. v. Walter Reade Organization, Inc., 322 A.2d 109 (Pa.Supreme Court: filed July 2, 1974); Proctor & Schwartz, Inc. v. Cleve. L. Co., *supra*. The character of American's conduct was such that it diverted its meat from a source of ready demand to another buyer in order to make a more lucrative sale with M & N, the Pennsylvania Plaintiff here. It is only just under the facts of this case to presume that the Defendant should have anticipated that in the event of his inability to conform to the terms of the contract, for whatever reasons, he would be required to defend in the forum most affected by the agreement.

An appropriate order will be entered denying the Defendant's Motion to Dismiss.