**CRUCIBLE, INC., a Delaware Corporation, Plaintiff,**

v.

**STORA KOPPARBERGS BERGS-LAGS AB, Defendant.**

**Civ. A. No. 74–917.**

United States District Court,
W. D. Pennsylvania.

Oct. 29, 1975.

**10**

Alexander Unkovic, Meyer, Unkovic & Scott, Pittsburgh, Pa., Marcus B. Finnegan, Finnegan, Henderson, Farabow & Garrett, Washington, D.C., Clair X. Mullen, Jr., Crucible, Inc., Pittsburgh, Pa., for plaintiff.

John M. Webb, Webb, Burden, Robinson & Webb, Pittsburgh, Pa., Henry W. Koster, Curtis, Morris & Safford, P.C., New York City, for defendant.

## OPINION

TEITELBAUM, District Judge.

This action for patent infringement under Title 35, United States Code is presently before the Court on a question of jurisdiction.

Defendant Stora Kopparbergs Bergslags AB (Stora-Sweden), a Swedish corporation maintaining no established place of business in Pennsylvania and not registered to do business in the state, has moved under Rule 12 of the Federal Rules of Civil Procedure to dismiss the complaint—alleging infringement of two United States patents owned by plaintiff covering powder metallurgy high-speed tool steels—on grounds that defendant is not amenable to service of process under the Pennsylvania Long Arm Statute (the Pennsylvania Statute), 42 P.S. § 8301 et seq.

Plaintiff Crucible, Inc., a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania, made service in the precise manner required by the Pennsylvania Statute (42 P.S. §§ 8307 and 8308), as authorized by Rule 4(e) of the Federal Rules of Civil Procedure. The manner of service has not been challenged by defendant and is not in issue here; nor, for that matter, is venue. See 28 U.S.C. § 1391(d); *Brunette Machine Works, Ltd. v. Kochum Industries, Inc.*, 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972). Indeed, the sole question presented by the parties is whether, in these circumstances, proper service of process under the Pennsylvania Statute subjects the defendant corporation to the *in personam* jurisdiction of this Court.

Counsel have been heard at oral argument, and the numerous briefs and affidavits have been duly considered. For

the reasons stated below, defendant's motion to dismiss will be denied.

Section 8302 of the current Pennsylvania Statute, pertaining to nonqualified foreign corporations, is central to the disposition of the instant motion. It provides in part as follows:

"(a) General Rule.—Any foreign corporation which shall have done any business in this Commonwealth without procuring a certificate of authority to do so . . . shall be conclusively presumed to have designated the Department of State as its true and lawful attorney authorized to accept, on its behalf, service of process in any action arising within this Commonwealth. . . ."

The basic issue then, is whether the relationship between Stora-Sweden and the Commonwealth, described by defendant as "casual," is sufficient to permit a finding that the corporation "has done business" in the state within the meaning of Section 8302(a). In this regard, Section 8309 of the Pennsylvania Statute is directly relevant. It provides in pertinent part as follows:

"Acts affecting jurisdiction

(a) General Rule—Any of the following shall constitute 'doing business' for the purposes of this chapter:

(1) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

\*   \*   \*   \*   \*   \*

(3) The shipping of merchandise directly or indirectly into or through this Commonwealth.

(b) Exercise of full constitutional power over foreign corporations.— In addition to the provisions of subsection (a) of this section the jurisdiction and venue of courts of the Commonwealth shall extend to all foreign corporations and the powers exercised by them to the fullest extent allowed under the Constitution of the United States."

■■ With the enactment of Section 8309(b) in 1972, the Pennsylvania Legislature clearly expressed its intention to extend *in personam* jurisdiction over foreign corporations to the fullest measure permitted by federal due process standards. See *Aquarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, Inc.*, 358 F.Supp. 441, 444 (E.D. Pa.1973). Under familiar doctrine, those constitutional standards are satisfied by a finding that the defendant corporation has certain "minimum contacts" with the Commonwealth, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citations omitted). I do not believe we do violence to such notions by holding that the requisite "minimum contacts" are present in this case.

Defendant is an established international steel manufacturer with annual sales in excess of $800 million and subsidiaries in some 14 countries. Its steel products enter the United States regularly and in large quantity. These products, however, are not sold directly into this country. Rather, they are sold entirely FOB Sweden, purchased at defendant's Soderfors plant by its wholly-owned American subsidiary, Stora Kopparberg Corporation (Stora-U.S.), a New York corporation headquartered in Darien, Connecticut, and imported to the latter's warehouses in New Jersey and Illinois. They are then resold exclusively by Stora-U.S. to various purchasers in this country.[1] In this fashion, defendant's steel products are regularly sold and shipped by Stora-U.S. to some 15 customers in Pennsylvania.[2] Clearly,

---

1. Defendant's sales transactions with its American subsidiary account for some 75% to 80% of the latter's total purchases.

2. Defendant's pulp and paper products also reach this state via Gottesman & Co., an independent New York corporation that pur-

the subsidiary's business activities in the Commonwealth are substantial.

■ Stora-U.S., then, is the conduit through which defendant's specialty steel products enter the United States and this Commonwealth, and it appears that the American company occasionally has imported such products through the port of Philadelphia. Similarly, Gottesman & Co. is the intermediary through which defendant's paper products reach the Pennsylvania market. These sales and shipments of Stora-Sweden merchandise into and through Pennsylvania plainly amount to defendant's "doing business" in this state under the "direct or indirect shipment" provision of Section 8309(a)(3) of the Pennsylvania Statute. See *Benn v. Linden Crane Co.*, 370 F.Supp. 1269 (E.D.Pa.1973). Stora-Sweden's employees have visited customers in this state to discuss customer needs and to promote and solicit sales of its products. It would seem to be beyond reasonable dispute that these products are sold and shipped into the Commonwealth with defendant's full knowledge and guidance. Moreover, Stora-Sweden clearly profits from the sale of its products in this state. If such profit is indirect, that is only because defendant chooses to market its products here, and throughout this country, via middlemen who purchase from it abroad and resell in the United States. In these circumstances, I am not persuaded that defendant should be permitted to insulate itself from the effect of Section 8309(a)(3) by contending that its products are sold through third parties. See *McCrory*

*Corp. v. Girard Rubber Corp.*, 225 Pa. Super. 45, 307 A.2d 435 (1973), *aff'd.* Pa., 327 A.2d 8 (1974). As the Court of Appeals for the Seventh Circuit has stated:

> "We look to the economic and commercial realities of this case, and in our view, it is not within the contemplation of the concepts of fairness and due process to allow a wrongdoing manufacturer to insulate himself from the long arm of the courts by using an intermediary or by professing ignorance of the ultimate destination of his products." *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1144 (7th Cir. 1975).

Any other result would permit a foreign corporation to market its products in this state, profit from their sale here, and yet retain immunity from suit in the Pennsylvania courts simply by structuring its business operation in such a way as to avoid direct activity in the Commonwealth. This is precisely what Stora-Sweden has attempted to do here, and I am not inclined to lend this Court's support to that endeavor.

■ I have not overlooked defendant's contention that it cannot be said to be doing business in Pennsylvania solely on grounds that its subsidiary, albeit wholly-owned, is selling Stora-Sweden steel products here. Indeed, it is true that under traditional concepts the existence of a parent-subsidiary relationship is, without more, insufficient to supply the contacts with the forum necessary to establish jurisdiction.[3] See, *e. g.*, *Can-*

---

chases from defendant in Sweden and Canada and resells in the United States to Pennsylvania customers. Such sales into Pennsylvania totalled some $170,000 over the past four years.

3. The precise nature of the business relationship between Stora-Sweden and Stora-U.S. is hotly disputed and, ultimately, unclear. Plaintiff would characterize the American corporation as a sales agent, "controlled and dominated in every aspect of its operation by the Swedish parent." Defendant insists that "there is no relationship between the

two companies other than the normal relationship of parent and subsidiary," and that Stora-Sweden and Stora-U.S. are merely seller and customer, engaging in arm's-length transactions. While it appears to this Court that, at minimum, defendant exerts considerable direct control over the policies and activities of the American company (indeed, I deem it questionable that Stora-Sweden and Stora-U.S. may be realistically characterized as "distinct entities," see 2 *Moore's Federal Practice*, ¶ 4.25[6] at 1174–1175), I am not prepared to hold that

*non Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925). However, even if defendant's contacts with this state were restricted to its subsidiary's activities here (which, as discussed *infra*, they are not), I do not read *Cannon Mfg. Co.* and its progeny to preclude a determination that Stora-Sweden has done business in Pennsylvania. While the view expressed in the *Cannon Mfg. Co.* line of cases constitutes a viable tenet of corporate law, that view would not appear to be required as a matter of federal due process, and there would seem to be no constitutional impediment to a long-arm statute authorizing jurisdiction over a parent corporation on the basis of its subsidiary's activities in the state. See *Smeltzer v. Deere & Co.*, 252 F.Supp. 552, 555–556 (W.D.Pa.1966). The current Pennsylvania Statute provides, at Section 8309(a)(3), that indirect shipments of merchandise into or through this Commonwealth constitute doing business here. The Section has been held to authorize the exercise of jurisdiction over an unregistered manufacturer whose products entered the state through an independent nonresident middleman. *McCrory Corp. v. Girard Rubber Corp.*, *supra*. I can perceive no legal or logical reason why Section 8309(a)(3) is not *a fortiori* applicable in the case of shipments into Pennsylvania through a subsidiary.[4] Defendant's steel ,and paper products are regularly shipped into this state through Stora-U.S. and Gottesman & Co. Under the plain language of Section 8309(a)(3), these indirect shipments into the Commonwealth are alone sufficient to support the conclusion that Stora-Sweden has done business here.

■ Additional circumstances render defendant amenable to suit in this case. Most significant among these is the fact that Stora-Sweden has negotiated and entered into at least three existing license agreements with Pennsylvania corporations, under which it has paid and received substantial royalties; defendant's employees have visited the Commonwealth on various occasions to negotiate these contracts and to provide and receive technical assistance thereunder. Stora-Sweden's entry into and maintenance of these patent, trademark and technology agreements clearly constitutes "[t]he doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object" under Section 8309(a)(1) of the Pennsylvania Statute. See *Crane Co. v. Federal Hydronics, Inc.*, 240 F.Supp. 180 (W.D.Pa.1965).

■ Moreover, these agreements might alone be deemed to supply contacts with this state sufficient to satisfy the federal due process standard adopted by the Pennsylvania Statute. In this regard, defendant's license agreement with United States Steel Corporation is particularly instructive. Paragraph 12 thereof provides as follows:

"*GOVERNING LAW*. This agreement has been made in Pittsburgh, Pennsylvania, and shall be governed by the law of the United States of America insofar as applicable and by

---

Stora-U.S. is defendant's "alter ego" in this country. See, *e. g.*, *Aamco Automatic Transmissions, Inc. v. Tayloe*, 368 F.Supp. 1283, 1299–1300 (E.D.Pa.1973). However, I do not consider that holding necessary to the conclusion that defendant has done business in Pennsylvania. Accordingly, the technical nature of the disputed relationship need not be determined here.

4. Although I am aware that there are cases decided under the Pennsylvania Statute which apply the doctrine of *Cannon Mfg. Co.*, see *e. g.*, *Steiner v. Dauphin Corp.*, 208 F.Supp. 104 (E.D.Pa.1962), these decisions preceded the recent amendments to the Statute making "the shipping of merchandise directly or indirectly into or through this Commonwealth" an independent form of "doing business" in the state. See *Aamco Automatic Transmissions, Inc. v. Tayloe*, 368 F.Supp. 1283, 1293 (E.D.Pa.1973). It is true that *Aamco* itself follows the *Cannon Mfg. Co.* view, *Id.* at 1299, but the "direct or indirect shipment" provision of the Pennsylvania Statute was inapplicable in that case. *Id.* at 1294.

the law of the Commonwealth of Pennsylvania . . . in all other respects."

By its agreement with U. S. Steel Corporation, as well as by a variety of other direct and indirect contacts with Pennsylvania, defendant has ". . . purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Due process requires no more. See *Image Ten, Inc. v. Walter Reade Organization, Inc.*, 456 P. 485, 489, 322 A.2d 109 (1974). Indeed, if anything offends our sense of fair play and substantial justice in these circumstances, it is the proposition that defendant should be permitted to deliberately avail itself of the benefits of this Commonwealth while avoiding the jurisdiction of the Pennsylvania courts.

I have not failed to consider defendant's contention that this Court lacks jurisdiction over it because the acts of patent infringement alleged in this case were not committed in Pennsylvania, and the instant cause of action therefore does not arise out of Stora-Sweden's contacts with the Commonwealth. In these circumstances, however, that contention is simply not persuasive. At least where, as here, a foreign corporation has multiple, substantial contacts with this state, neither the Pennsylvania Statute nor the federal due process standard which it incorporates requires, for purposes of jurisdiction, a relationship between the acts establishing that the corporation is "doing business" in Pennsylvania and the acts giving rise to the cause of action to be litigated here. See *Siders v. Upper Mississippi Towing Corp.*, 423 F.2d 535 (3d Cir. 1970); *Image Ten, Inc. v. Walter Reade Organization, Inc., supra; Myers v. Mooney Aircraft*, 429 Pa. 177, 240 A. 2d 505 (1967); *Glen Knit Industries, Ltd. v. E. F. Timme & Son, Inc.*, 384 F. Supp. 1176 (E.D.Pa.1974). See also

*Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

Thus, on the basis of what has been set forth above, I find that the defendant corporation is "doing business" in this Commonwealth within the meaning of the Pennsylvania Long Arm Statute and is therefore subject to the *in personam* jurisdiction of this Court. Accordingly defendant's motion to dismiss will be denied. An appropriate Order will issue.