Pullman SWINDELL, a Division of Pullman Incorporated, a corporation, Plaintiff,

v.

GUYANDOTTE WATER AND SEWER DEVELOPMENT· ASSOCIATION, a corporation, Defendant.

Civ. A. No. 76–581.

United States District Court, W. D. Pennsylvania.

Feb. 2, 1977.

Joseph F. Hmel, Jr., Pittsburgh, Pa., for plaintiff.

Samuel P. Delisi, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

TEITELBAUM, District Judge.

This is a contract action brought by plaintiff Pullman Swindell (Swindell) against defendant Guyandotte Water and Sewer Development Association (Guyandotte), a locally-based association of Logan County, West Virginia residents interested in improving water and sewer facilities in their community.

Guyandotte is organized as a nonprofit corporation in West Virginia. Plaintiff Swindell, an engineering and construction firm, is a division of Pullman Incorporated, a Delaware corporation, and has its administrative and executive offices and principal place of business in Pittsburgh, Pennsylvania. The amount in controversy between the parties exceeds $10,000.00.

This case is presently before the Court on defendant's motion to dismiss the complaint for lack of in personam jurisdiction, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. The motion to dismiss will be granted on grounds that the nexus between defendant's activities and the Commonwealth of Pennsylvania is insufficient to justify the exercise of jurisdiction under the Pennsylvania "Long Arm" Statute, 42 Pa.C.S.A. § 8301 et seq., and the federal due process standard adopted therein, 42 Pa.C.S.A. § 8309(b).

The contract upon which this suit is grounded arose out of defendant Guyandotte's efforts to develop water and sewer facilities for residents of the Logan, West Virginia area. The contract itself—a written agreement for engineering services to have been provided by Swindell in West Virginia—is the sole basis for the assertion of jurisdiction over the out-of-state defendant. Guyandotte's only alleged contact with this Commonwealth is that its contract with Swindell was "formally executed on behalf of plaintiff" at the latter's Pittsburgh office (emphasis supplied).

The following facts are pertinent to the jurisdictional issue: Plaintiff is internally divided into four operating groups, one of which is the Civil Works Group. Swindell's Civil Works Group maintains a branch office in Charleston, West Virginia and engages in civil works projects such as water, sewer and sanitary system design, as well as highway and bridge design and engineering. Plaintiff was known to defendant as a West Virginia engineering firm through its (Swindell's) offices in Charleston,[1] and Guyandotte entered into discussions with the firm ". . . because it needed locally-based engineering services which would meet the standards of local offices of state and federal agencies."[2]

All dealings and discussions between Guyandotte and Swindell took place in West Virginia. The latter's staff met with defendant solely in that state, primarily in Logan and Charleston, at Swindell's office. The services contemplated by the parties' eventual agreement—engineering services

---

1. Plaintiff makes much of the proposition that, early on in the parties' dealings, defendant possessed sufficient information to enable it to determine that Swindell was a Pittsburgh-based corporation, or, at least, not solely a West Virginia corporation. This is entirely possible; indeed, it does not appear to the Court that Guyandotte denies that assertion. As discussed infra, however, whether vel non defendant knew or had reason to know that plaintiff's principal office is in Pennsylvania is in my view of limited significance in the totality of these circumstances.

2. Affidavit of Roscoe Thornbury, ¶ 2. Mr. Thornbury is defendant's President and Executive Director.

for a "water supply and sewage system facility for Big Creek and Big Creek Extension, Logan County, West Virginia" (Complaint, ¶ 6)—were to be performed entirely in West Virginia. In short, the contract was wholly West Virginia centered.

The terms of the written agreement under which this action is brought were reviewed and approved by the parties at a meeting at Swindell's Charleston office. Roscoe Thornbury, for Guyandotte, subsequently signed the contract in West Virginia. Thereafter, one Donald Stingel, then Executive Vice President of Swindell, signed the contract on behalf of plaintiff in his Pittsburgh office.

Defendant Guyandotte has never performed any activity in Pennsylvania and has never conducted business in the Commonwealth; it has no offices, no property, no agents nor any other presence in this State. The only asserted contact between defendant and Pennsylvania is that the subject contract was signed for Swindell in Pittsburgh, by Pittsburgh-based officers of plaintiff, and therefore purportedly was executed in this Commonwealth.[3]

**3.** A letter from Swindell's Pittsburgh office to a Guyandotte consultant, dated February 21, 1972, five days after the aforementioned West Virginia meeting, recites that Swindell "would require the signature of the owner on the contract before . . . [it] would formally execute the contract."

**4.** A non-profit foreign corporation cannot be subject to out-of-state service of process unless it "shall have done any business" in Pennsylvania. 42 Pa.C.S.A. § 8302. The various explicit tests for "doing business" in the state are prescribed at 42 Pa.C.S.A. § 8309(a), as follows:

"(a) General rule.—Any of the following shall constitute 'doing business' for the purposes of this chapter:
(1) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.
(2) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.
(3) The shipping of merchandise directly or indirectly into or through this Commonwealth.

■ Having recently written at some length on the question of the reach of the Pennsylvania Long Arm Statute, see *Crucible, Inc. v. Stora Kopparbergs Bergslags AB*, 403 F.Supp. 9 (W.D.Pa.1975), the Court does not deem it either useful or necessary on this occasion to engage in extended discourse on the relevant provisions of that legislation. Instead, we begin simply by observing that it would seem plain that defendant Guyandotte has not "done business" in this Commonwealth within the meaning of any of the provisions of 42 Pa.C.S.A. § 8309(a).[4]

■ With particular regard to subsections (1) and (2) of § 8309(a), it is noted that the exercise of jurisdiction requires more than the wholly isolated "act" or "event" present in the case *sub judice*. What is contemplated by these subsections is an actual or intended series of acts done in the Commonwealth; thus, even if it be assumed that the contract here at issue was formally executed in Pennsylvania, that is not sufficient to render Guyandotte amenable to service of process under § 8309(a). See *Columbia Metal Culvert Co., Inc. v. Kaiser Industries Corp.*, 526 F.2d 724 (3d Cir. 1975).[5]

(4) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by the Commonwealth or any of its agencies.
(5) The ownership, use or possession of any real property situate within this Commonwealth."

Subsections (3), (4) and (5) of § 8309(a) are clearly inapplicable herein. Defendant has shipped no merchandise into or through the state, engaged in no business or profession within the state nor owned or used real property situate within the state.

**5.** Jurisdiction was found under § 8309 in *Columbia Metal, supra,* because the defendant had actively solicited business and made a sale in Pennsylvania, circumstances absent herein. However, confronted with a situation in which both parties apparently had signed an agreement in Pennsylvania and the defendant had met with the plaintiff in the state several times in order to secure the contract for a distributorship to include Pennsylvania territory, the court held that under § 8309(a), ". . . execution of the contract alone will not allow assertion of jurisdiction over the distributor", and noted that the tests set forth in § 8309(a)(1) and (2) are not satisfied where

Section 8309(b) of Title 42, Pa.C.S.A. provides as follows:

"(b) Exercise of full constitutional power over foreign corporations.—In addition to the provisions of subsection (a) of this section the jurisdiction and venue of courts of the Commonwealth shall extend to all foreign corporations and the powers exercised by them to the fullest extent allowed under the Constitution of the United States."

As this Court stated in *Crucible, Inc. v. Stora Kopparbergs Bergslags AB, supra* at 11:

". . . With the enactment of Section 8309(b) in 1972, the Pennsylvania Legislature clearly expressed its intention to extend *in personam* jurisdiction over foreign corporations to the fullest measure permitted by federal due process standards. See *Aquarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, Inc.,* 358 F.Supp. 441, 444 (E.D.Pa.1973). Under familiar doctrine, those constitutional standards are satisfied by a finding that the defendant corporation has certain 'minimum contacts' with the Commonwealth, 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citations omitted)."

In *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), the Supreme Court instructed that as a matter of due process:

"[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

I think it plain from the tenor and substance of this Court's Opinion in *Crucible, Inc. v. Stora Kopparbergs Bergslags AB, supra,* that I am entirely unwilling to permit a foreign corporation to avail itself of Pennsylvania benefits and protections while, at the same time, avoiding the jurisdiction of the courts of the Commonwealth. But I am equally unwilling to impart a near-limitless scope to § 8309(b) by asserting jurisdiction over a non-profit corporation whose only possible contact with Pennsylvania is so marginal as to be *de minimus.*

Defendant herein cannot fairly be deemed to have deliberately availed itself of the privilege of conducting activities in Pennsylvania, or to have invoked the benefits and protections of state law. Guyandotte has performed no acts and has no presence in the Commonwealth. Its dealings with plaintiff were restricted to West Virginia—the Swindell-Guyandotte contract was negotiated and approved in that state, and was to be performed there. The only alleged contact between defendant and Pennsylvania is that Guyandotte contracted for the locally-available engineering services of a Pennsylvania-based company which, at its own insistence, formally signed the agreement in Pittsburgh. It is the essence of plaintiff's argument that the contract therefore was actually executed in

---

these activities were too isolated and ". . . not merely one of a contemplated series of such acts." *Id.* at 728.

We are of course aware of the court's language in *Columbia Metal, supra* at 728, to the effect that: ". . . execution of the contract itself in Pennsylvania might have sufficed to link Kennedy to Pennsylvania if the Legislature had manifested an intention to extend jurisdiction over nonresident individuals, as well as corporations, to the limits of due process."

The question here is nonetheless whether the Swindell-Guyandotte contract was or should be deemed to have been executed in this state, and, more broadly, whether *vel non* the limits

of federal due process would be transgressed by a finding of jurisdiction in these circumstances. This question is discussed *infra*; we note at this juncture, however, that regardless of the possible effects of the execution of the contract in Pennsylvania in the circumstances of the *Columbia Metal* case, the determination of whether a foreign corporation's contacts with a particular state are sufficient to render the corporation amenable to process in that state inevitably must be made on an *ad hoc,* case-by-case basis, and not by the application of a mechanical rule. See *Campbell v. Triangle Corp.,* 336 F.Supp. 1002 (E.D.Pa.1972).

Pennsylvania and is subject to Pennsylvania law, and that, for this reason, defendant should be found to have deliberately invoked the benefits and protections of state law.

I cannot agree. We are dealing here with a question of due process, a matter of "fair play and substantial justice," and not with an issue calling for a technical application of black letter contract law. It indeed may be so that the place of final acceptance of a contract—here, Pennsylvania—is the situs of formal contract execution, and that Pennsylvania law governs the validity and construction of a contract formally executed in this state. But in these circumstances, where defendant's contract with Swindell may be subject to Pennsylvania law, but defendant did not act in the Commonwealth or purposefully invoke the benefits and protections of state law, formal execution of the agreement in Pennsylvania will not alone supply a basis for the exercise of the Court's jurisdiction. Compare *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.,* 228 Pa.Super. 12, 323 A.2d 11 (1974), where jurisdiction was based on, *inter alia,* the fact that the defendant foreign corporation, a wholly commercial enterprise which was party to a contract accepted and executed by the plaintiff at the latter's Philadelphia office, had specifically agreed by the terms of the contract that Pennsylvania law would govern, thus deliberately joining in the invocation of its benefits and protections.

In this case, the Guyandotte-Swindell agreement contains no choice of law clause and cannot be deemed to have been made subject to Pennsylvania law. Functionally, the contract may in fact be subject to Pennsylvania law under the choice of law rules of this state and West Virginia, but the absence of a choice of Pennsylvania law

clause in the Guyandotte-Swindell contract, present in the *Proctor & Schwartz* agreement, bears directly on whether defendant can fairly be said to have purposefully invoked the Commonwealth's benefits and protections—and this is so whether *vel non* Guyandotte had reason to know that the enterprise with which it was dealing locally, through a local, West Virginia office, was actually based principally in Pittsburgh.

It must be recognized here that Guyandotte is not a business concern which has conducted activity in Pennsylvania for pecuniary gain, and cannot fairly be presumed to have taken the business risk of suit in the Commonwealth. Rather, defendant is a non-profit, wholly local West Virginia citizens' association which endeavored to secure locally-based engineering services for a local water and sewer facility, and, to this end, dealt with plaintiff only in West Virginia. In such circumstances, I cannot agree with plaintiff that Guyandotte should reasonably have anticipated the possibility that its local dealings might be the subject of a distant lawsuit.[6]

In summary, then, I find that defendant Guyandotte cannot be said to have purposefully, deliberately or even voluntarily acted within Pennsylvania, or to have invoked the benefits or protections of this state's law. Moreover, the instant cause of action does not arise out of defendant's activities within the Commonwealth (there being none), but rather from the alleged breach of contractual obligations which Guyandotte assumed in West Virginia and which were breached or performed in that state.

Plaintiff urges a finding of jurisdiction herein solely on grounds that, at its insistence, Swindell—a commercial enterprise that acted outside this state to further its business—formally signed the Guyandotte contract in Pittsburgh. The isolated Penn-

---

6. See *Tractman v. T.M.S. Realty and Financial Services,* 393 F.Supp. 1342, 1345 (E.D.Pa.1975); *Follansbee Metals Co., Inc. v. John T. Clark and Son,* 387 F.Supp. 574, 580 (W.D.Pa.1974); *M & N Meat Co. v. American Boneless Beef Corp.,* 380 F.Supp. 912, 916–917 (W.D.Pa. 1974); *Rosen v. Solomon,* 374 F.Supp. 915, 920 (E.D.Pa.1974).

It should be noted parenthetically that the above use of the term "distant" is not inappropriate; defendant apparently is located in the southeastern corner of West Virginia, far from the nearest airport.

sylvania contact asserted by plaintiff is marginal at best, of scant substance and poor quality. In such circumstances, I consider it neither fair nor reasonable to subject Guyandotte to suit in this Commonwealth. Accordingly, I find that the principles of federal due process embodied in the Pennsylvania Long Arm Statute prohibit the exercise of jurisdiction in this case.

For all of the reasons set forth above, Guyandotte's motion to dismiss will be granted. An appropriate Order will issue.