SHEN MANUFACTURING COMPANY, INCORPORATED, d/b/a John Ritzenthaler Company

v.

GEN-TEX PRINTING COMPANY, INC.

Civ. A. No. 77–4168.

United States District Court, E. D. Pennsylvania.

Nov. 9, 1978.

John P. O'Dea, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for plaintiff.

Feder, Kaszovitz & Weber, New York City, for defendant.

## MEMORANDUM

POLLAK, District Judge.

Plaintiff is a Pennsylvania corporation. Its principal business, according to the affidavit of its general manager, is "selling goods, consisting of towels, dishcloths, washcloths and other cut goods to the retail trade." Defendant Gen-Tex Printing Co., alleged in the complaint to be "a corporation organized and existing under the laws of a state other than the Commonwealth of Pennsylvania," is located in Brooklyn. Defendant's office manager has said in affidavit that defendant's "sole business consists of the imprinting of cloth (i. e., towels, washcloths) manufactured by others."

According to the complaint as amplified by the affidavit of plaintiff's general manager, plaintiff, beginning in November, 1976, sent "towels, dishcloths and cut goods" to defendant's Brooklyn plant for the imprinting of designs pursuant to prices quoted by defendant to plaintiff. This happened with some regularity until, according to the complaint, a fire at defendant's plant on May 17, 1977 consumed goods and silk screens belonging to plaintiff of the value of $11,358.44. The present lawsuit was brought

by plaintiff to recover for this loss. Defendant has moved to dismiss for lack of *in personam* jurisdiction, or, in the alternative, for an order transferring this action to the Southern District of New York.

## I.

■ The jurisdictional question is governed by 42 Pa.C.S.A. § 8309(b) (Supp.1978), which extends jurisdiction over foreign corporations "to the fullest extent allowed under the Constitution of the United States."[1] According to an affidavit submitted by its office manager, defendant maintains no sales office, telephone, or sale representative in the Commonwealth and has never sent an employee here for corporate purposes. Its customers "send their goods to [the] plant in Brooklyn, New York, for the purpose of having those goods imprinted with the designs selected by the customers [and] then take their goods back" after the imprinting is complete. These customers include plaintiff and two other Pennsylvania manufacturers. And, defendant avers that all three Pennsylvania customers approached defendant, unsolicited, on the recommendation of others in the industry.[2]

Defendant's argument in support of dismissal rests principally on three cases: *Middle Atlantic States Engineering Inc. v. Camden City Municipal Utilities Authority*, 426 F.Supp. 299 (E.D.Pa.1977); *Swindell v. Guyandotte Water and Sewer Development Association*, 425 F.Supp. 830 (W.D.Pa.1977); and *George Transport and Rigging Company, Inc. v. International Publications Equipment Corp.*, 425 F.Supp. 1351 (E.D.Pa.1977). Those cases, however, involved transactions that had little, if any, relation to Pennsylvania. In *Middle Atlantic States Engineering*, jurisdiction was found wanting when a Pennsylvania corporation sued a New Jersey municipal corporation on the basis of a contract negotiated and executed in New Jersey—where plaintiff had a business office—regarding the evaluation, planning and coordination of New Jersey sewage facilities. In *Swindell*, a Pennsylvania corporation sought jurisdiction over a non-profit wholly-local Virginia citizens association, which had dealt with plaintiff through plaintiff's West Virginia office, for the purpose of securing engineering services for a West Virginia water and sewage facility. And in *George Transport and Rigging*, the defendant's only contact with the Commonwealth was its use of Pennsylvania highways to deliver goods for a Maryland plaintiff from Maryland to Indiana and New York. These three decisions denying jurisdiction seem proper enough, but they do not seem to require dismissal of an action in which a foreign corporation is being asked to defend a lawsuit arising out of a transaction, to which it was a party and which had foreseeable consequences in the forum state. See D. Currie, *The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois*, 1963 U.Ill.L.F. 533, 549.

1. (a) General rule.—Any of the following shall constitute "doing business" for the purposes of this chapter:
   (1) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.
   (2) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.
   (3) The shipping of merchandise directly or indirectly into or through this Commonwealth.
   (4) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by the Commonwealth or any of its agencies.
   (5) The ownership, use or possession of any real property situate within this Commonwealth.
   (b) Exercise of full constitutional power over foreign corporations.—In addition to the provisions of sub-section (a) of this section the jurisdiction and venue of courts of the Commonwealth shall extend to all foreign corporations and the powers exercised by them to the fullest extent allowed under the Constitution of the United States.

2. Plaintiff, through an answering affidavit, describes the onset of the business relationship somewhat differently—seeing itself as more wooed than wooer. For purposes of ruling on the jurisdictional question, defendant's description will be taken as accurate.

Generally speaking, the question whether that fictive nomad called a foreign corporation has a constitutionally detectable "presence" outside its customary habitat is not the sort of question which yields a ready answer one way or another. It is—perhaps even more than is true with most legal problems—a matter of a little more or a little less. The facts of one case have only a limited transfer value to other situations: In large measure, this is so for the very reason that the entire doctrinal inquiry—will "due process of law" be offended if this unentity is required to "appear" here?—smacks of the kind of elegant unreality that only lawyers can admire. Nevertheless, to the extent that the inquiry can be put in sharper focus under the lens of comparable facts, it would seem that more useful lessons can be derived from *M & N Meat Company v. American Boneless Beef Corp.*, 380 F.Supp. 912 (W.D.Pa.1974), than from the cases defendant relies on. There, a Pennsylvania plaintiff through a Chicago broker ordered three loads of beef, stored in New York, from a Massachusetts defendant. At plaintiff's direction, defendant shipped the first load of beef to Indiana and Tennessee, but defendant allegedly failed to supply the remaining beef; whereupon plaintiff brought suit in the Western District of Pennsylvania. Judge Snyder concluded that, by virtue of the Pennsylvania long-arm statute, as construed in *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 323 A.2d 11 (1974), there was proper *in personam* jurisdiction over the defendant.

To be sure, there are some factual differences between *M & N Meat Company v. American Boneless Beef Corp.* and the present case. For example, in the present case defendant insists that it has nothing to do with the shipment to or from its Brooklyn plant of the goods on which it prints designs, whereas in *M & N Meat Company v. American Boneless Beef Corp.* defendant was the shipper and at least some part of the shipment which was consummated seems to have passed through Pennsylvania. On the other hand, the present case is one in which defendant and plaintiff, according to the uncontradicted allegations, appear to have had a continuous business relationship for approximately half a year. Under these circumstances, Judge Snyder's rationale in *M & N Meat Company v. American Boneless Beef Corp.* would seem of equal force here. Defendant "could reasonably foresee that its transaction would have realistic economic impact on the commerce of Pennsylvania;" the transaction was the genesis of the litigation; and therefore, "It is only just under the facts of this case to presume that the Defendant should have anticipated that in the event of his inability to conform to the terms of the contract, for whatever reasons, he would be required to defend in the forum most affected by the agreement." 380 F.Supp. at 915, 917.[3]

3. It is arguable that *Proctor & Schwartz, Inc. v. Cleveland Lumber* is not apt authority for a case like the instant one, for the reason that the contract sued on there was determined by the Superior Court to be a Pennsylvania contract, whereas the facts to be developed in the instant litigation may be such as would lead this Court to conclude that a Pennsylvania state court would characterize the contract which has given rise to the present controversy as a New York contract. But this conjectural difference between the cases is not of constitutional dimension. *M & N Meat Company v. American Boneless Beef Corp., supra.* And it is the Constitution which defines the reach of the Pennsylvania long-arm statute. As Judge Ditter recently observed, "The minimum contacts doctrine of [*International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)] hailed the development of a functional approach to questions of personal jurisdiction which should not be disparaged by the subtle niceties of the law of contracts." *Inpaco, Inc. v. McDonald's Corp.*, 413 F.Supp. 415, 419 (E.D.Pa.1976). Whether this Court found the contract involved in the present case to be a "New York contract" or a "Pennsylvania contract" might have choice of law implications but (given the other ways in which this transaction impinges on Pennsylvania) would neither weaken nor strengthen this Court's *in personam* jurisdiction over defendant. It is, of course, a familiar aspect of the legal landscape that a particular contract (or tort, or other transaction with litigation consequences) may, depending on the forum in which litigation takes place, yield varying substantive consequences because of the differences in the substantive law of different jurisdictions. Although the notion that there might be a contrariety of substantive responses to the same

In sum, in the light of the transaction which has given rise to this lawsuit, there seems to be no constitutional obstacle to directing this defendant to answer this complaint in a court sitting in Pennsylvania; for defendant here has "[the] very minimal contacts [with Pennsylvania] required to satisfy due process." *Columbia Metal Culvert Co., Inc. v. Kaiser Industries Corp.,* 526 F.2d 724, 730 (3d Cir. 1975).

## II.

 In support of its alternative motion to transfer this action to a federal court in New York, pursuant to 28 U.S.C. § 1404(a),[4] defendant argued that two individuals whom it desired to implead—Milton Rinzler, the owner of the building where the fire occurred, and Vincent Violano, the repairman who serviced defendant's sprinkler system—were amenable to process in New York but not in this forum. But soon after filing the motion to transfer, defendant moved for leave to join Rinzler and Violano as third-party defendants in this forum—a motion granted by Judge Davis before this case was reassigned to me. Both Rinzler and Violano have been served, but to date neither one has filed an answer or other response to the third-party complaint, and on motion of the defendant default judgments have been entered against both. As matters now stand, therefore, the question of transfer reduces to a question of the balance of convenience as between the litigants. Defendant's understandable preference to be sued in its home jurisdiction does not suffice to displace plaintiff's home preference, reflected in plaintiff's choice of this forum. *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970). Were the case

transaction grieved the late Professor Joseph Beale and like-minded choice-of-law purists of the past, we have become accustomed to a more pluralist view of choice of law. See *Hanson v. Denckla,* 357 U.S. 235, 284, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). To be sure, there are very occasional instances in which a multistate transaction's contacts with one state so predominate that substantive due process insists that only that state's substantive law may be applied. See *Home Insurance Co. v. Dick,* 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930).

one in which third-party defendants could not be sued here, the motion to transfer would be seen in a different light. But that is not the present posture. Accordingly, the motion to transfer will be denied but without prejudice to its renewal should the posture of the case appear to change.

### CONCLUSION

For the reasons set forth in this Memorandum an order denying both the defendant's motions will be entered concurrently with the filing of this Memorandum.

But even in such instances, the judiciaries of two or more states might well be able, consistently with procedural due process, to assert *in personam* jurisdiction to apply the single constitutionally authorized species of substantive law.

4. That section provides as follows:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.