William **HAEBERLE** and John W. **Magee, Jr.,** trading as Villanova Leasing Company, William Haeberle and Harman S. Spolen, trading as Wayne Leasing Company, William Haeberle and Oliver Vanderbilt, trading as Windsor Leasing Company,

v.

**TEXAS INTERNATIONAL AIRLINES.**

Civ. A. No. 80–715.

United States District Court,
E. D. Pennsylvania.

Sept. 24, 1980.

On Motion to Reargue Oct. 8, 1980.

Lawrence J. Fox, Philadelphia, Pa., for plaintiffs.

Henry H. Janssen, Philadelphia, Pa., for defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

This is an action to recover damages for breach of three aircraft–leasing contracts. Defendant has moved to dismiss under F.R.C.P. 12(b)(1–6), or, in the alternative, to transfer the case under 28 U.S.C. § 1404(a), offering sundry reasons why the United States District Court for the Eastern District of Pennsylvania cannot, or should not, be the forum for plaintiffs' claim. Although, as will be noted below, the factual record presented is not without some ambiguity, the issues of law raised by defendant's challenges to subject–matter jurisdiction, personal jurisdiction and venue, and by defendant's *forum non conveniens* argument, are ripe for resolution at this point.

## I.

Plaintiffs' complaint states that this is an action brought by three limited partnerships—each owning one Convair 600 aircraft—for damages caused by the breach of agreements under which defendant leased planes from plaintiffs. The jurisdiction of the court is grounded on the diversity jurisdiction of 28 U.S.C. § 1332(c). The complaint identifies the parties as follows:

Plaintiffs William L. Haeberle and John W. Magee, Jr. trading as Villanova Leasing Company ("Villanova") are the general partners of a Pennsylvania limited partnership with its principal place of business in Media, Pennsylvania. The general partners in this partnership are residents of Indiana and California.

Plaintiffs William L. Haeberle and Harman S. Spolen, trading as Wayne Leasing Company ("Wayne"), are the general partners of a Pennsylvania limited partnership with its principal place of business in Media, Pennsylvania. The general partners in this partnership are residents of Indiana and Pennsylvania.

Plaintiffs William L. Haeberle and Oliver DeG. Vanderbilt, trading as Windsor Leasing Company ("Windsor"), are the general partners of a Pennsylvania limited partnership with its principal place of business in Media, Pennsylvania. The general partners in this partnership are residents of Indiana and Pennsylvania.

Defendant Texas International Airlines ("TIA"), is a Texas corporation with its principal place of business in Houston, Texas. TIA is the successor in interest of Trans–Texas Airways ("TTA").

The complaint states that on or about September 5, 1968, plaintiffs entered into agreements, by which each of the limited partnerships leased a plane to Systems Capital Aircraft, Inc. (Systems). On or about the same date, pursuant to three sub–leases, Systems leased the three planes to Trans–Texas Airways (Trans–Texas). Ultimately, the three limited partnerships became the lessors under the sub–leases be-

tween Systems and Trans–Texas under the terms of three novations entered into on March 31, 1977. A copy of each of the nine relevant agreements is attached to the complaint.

Plaintiffs' complaint further states that Texas International, as successor in interest to Trans–Texas, was obligated to return the property in its original condition (reasonable wear and tear excepted), with the original engines and avionics, or their equivalent; to make all necessary repairs; to comply with all laws relative to the licensing, maintenance, use and storage of the property; and to return the leased property "to its sublessor or its designated agent at any airport within 150 air miles of Philadelphia, Pennsylvania which Systems shall designate to [Lessee] in writing."

Plaintiffs then allege that, notwithstanding the above–summarized contractual provisions, Texas International abandoned the planes in Tucson, Arizona, stripped of engines and equipment, eighteen months before the lease expired, and allowed the planes to deteriorate, thereby breaching the agreement in regard to the required return, maintenance and licensing provisions.

## II.

### SUBJECT–MATTER JURISDICTION

The complaint's documentation of plaintiffs' assertion of diversity jurisdiction is very wide of the mark:

1. To establish their entitlement to sue a Pennsylvania corporation, plaintiffs rest on recitals that each of them, as a general partner of a "Pennsylvania limited partnership," resides in a state (variously, California, Indiana and Pennsylvania) other than Texas, the state in which defendant is incorporated.

2. Characterization of an entity as a "Pennsylvania limited partnership" endows it with no Pennsylvania citizenship for diversity purposes. To establish diversity jurisdiction, plaintiffs had to show that the

individual members of the several limited partnerships are all of diverse citizenship from the defendant. Moreover, at least in this Circuit, the focus on the citizenship of the individual members of the limited partnership extends not just to the general partners but to the limited partners as well. *Carlsberg Resources Corporation v. Cambria Savings & Loan Association,* 554 F.2d 1254, 1259–62 (3d Cir. 1977); *but cf. Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178 (2nd Cir. 1966).

3. The complaint is, therefore, defective in two respects: (1) With respect to the members of the limited partnerships, the complaint talks only of the general partners. (2) And, even as to the general partners, the complaint talks only of residence, not citizenship.[1]

Nor do the supplementary documents plaintiffs rely on rescue their defective complaint: The Certificates of Limited Partnership list the limited, as well as the general, partners; but here again it is residence which is set forth, not citizenship. Moreover, the Certificates apparently were current in 1969, so even as to present residence, they are hardly compelling evidence. Plaintiffs have sought to bring their recitals up to date by submitting certain correspondence sent by plaintiffs' counsel to defendant's counsel prior to the filing of defendant's motion; but, once again, the documents relied on go only to residence, not–at least in terms–to citizenship.

The foregoing deficiencies of the complaint and the ancillary documents would ordinarily lead to the entry forthwith of an order of dismissal. However, I am moved to permit a very brief delay of the entry of such an order by plaintiffs' earnest and persistent representations that the jurisdictional showing absent on the present record can in fact be made. Plaintiffs will be directed to file, within five days from the filing date of this memorandum and the

---

1. *Barrett v. Covert,* 354 F.Supp. 446 (E.D.Pa. 1973) *is not, as plaintiffs contend, authority for the equivalence of residence and citizenship; it* is authority for the equivalence of *domicile* and citizenship.

accompanying order, an amended complaint properly reciting the basis for the diversity jurisdiction plaintiffs assert. Failure, within the prescribed time period, to file an adequate amended complaint, or to show good cause why such filing is not feasible, will lead to dismissal of this action forthwith.

Because it seems not unlikely that plaintiffs will, in an amended complaint, be able to show that this is a proper diversity case, I will proceed to consider the further points raised by defendants' motion.

## III.

### PERSONAL JURISDICTION

The Pennsylvania long–arm statute, 42 Pa.C.S.A. § 5322(b), provides that "(a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with the Commonwealth allowed under the Constitution of the United States." Subsection (c) of 42 Pa.C.S.A. § 5322 provides that when jurisdiction is based on minimum contacts, only a cause of action arising from the contacts may be asserted against him.

■ Given "[the] very minimal contacts with Pennsylvania required to satisfy due process," *Shen Manufacturing Co., Inc. v. Gen–Tex Printing Co.*, 465 F.Supp. 829, 832 (E.D.Pa.1978) (quoting *Columbia Metal Culvert Co., Inc. v. Kaiser Industries Corp.*, 526 F.2d 724, 730 (3d Cir. 1975)), there is no doubt that defendant–if properly served with a proper complaint–would be properly asked to defend this action in Pennsylvania. Plaintiffs have offered the affidavit of Charles Ballard, an officer of Systems' parent company at the time of the initial lease and sublease transaction between Systems and Trans–Texas. The affidavit states Mr. Ballard's recollection that the negotiations between Systems and Trans–Texas took

place in Systems' office in Philadelphia and included one five–day period of intensive negotiations in that office between an attorney representing Trans–Texas and Systems' officials.[2] It is not controverted by defendant that Trans–Texas is Texas International's predecessor in interest. It would thus appear that Trans–Texas' negotiations, by which it "purposely [availed] itself of the privilege of conducting activities within the forum state," *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), are properly attributed, at least in this instance, to Texas International.

■ In addition, payments under the lease agreement have apparently been made by defendant, over the long course of the lease, to plaintiffs in Pennsylvania. Defendant agreed to the novations by which it and the Pennsylvania partnerships fell into contractual privity. The original lease agreements established security escrow accounts in Philadelphia and New York. Finally, each airplane was to be returned to an airport chosen by the lessor within 150 miles of Philadelphia. Perhaps no one of these factors would, in isolation, suffice. But their sum leaves no doubt that the underlying transaction, and the continuous business relationship which developed pursuant to it, had sufficient economic connection with the Commonwealth to make it reasonable to have Texas International defend related lawsuits here.

Defendant wishes the court to take an even broader view of the personal jurisdiction question. Defendant complains that it was not itself a party to the original lease agreements, and that the specific breaches of which it is accused–the alleged failures to maintain the planes, and the abandonment of the planes in the Arizona desert– (a) did not occur in Pennsylvania, and (b) have little relation to certain of the Pennsylvania "contacts," particularly the escrow account and the rental payments. Thus, defendant argues, it is simply unfair, hence

---

**2.** While defendant does not contest the affidavit's factual recitation, the defendant questions its competence as not having been made on personal knowledge because it does not state that Mr. Ballard himself participated in the negotiations. As a corporate officer, however, Ballard may be permitted to recount a corporate knowledge of these events.

unconstitutional, to use those contacts as a basis for jurisdiction.

■ But in considering the fairness of a forum in Pennsylvania asserting personal jurisdiction over a citizen of a different state in a contract case, it seems analytically unproductive to speculate about the geographic nexus, if any, between the forms of breach alleged and the various events involved in the negotiation and pre–breach performance of the contract. Rather, it is the affiliational activity of the defendant–evident in the history of the transaction; most particularly in the negotiation stage, but also in its performance–and the economic impact of the transaction, in both performance and breach, that define minimal contacts in a contract action.

What was said in *Shen Manufacturing Co., Inc. v. Gen–Tex Printing, supra,* at 829, is pertinent here:

> Defendant "could reasonably foresee that its transaction would have realistic economic impact on the commerce of Pennsylvania;" the transaction was the genesis of the litigation; and therefore, "It is only just under the facts of this case to presume that the Defendant should have anticipated that in the event of his inability to conform to the terms of the contract, for whatever reasons, he would be required to defend in the forum most affected by the agreement." [*M&N Meat Company v. American Boneless Beef Corp.,* 380 F.Supp. 912 at 915, 917 (D.C. Pa.).]

Assuming a valid complaint and valid service, there is jurisdiction *in personam* over the defendant in this action.

### IV.

### VENUE

Section 1391(a) of Title 28 states that: (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial dis-

trict where all plaintiffs or all defendants reside, or in which the claim arose.

*Where all defendants reside*

Section 1391(c) of Title 28 provides that: A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

Defendant has submitted an affidavit stating that it is a Delaware corporation and that it has never engaged in business, or maintained any business facility, mailing address or bank account within the Commonwealth of Pennsylvania, and that it has never had regularly scheduled flights into the Commonwealth.[3] Thus, defendant argues that it has no corporate residence here.

Plaintiffs note that Texas International petitioned the Civil Aeronautics Board for authority to operate from Dallas and Houston to Philadelphia, and that such authority was granted on March 16, 1979. Thus, plaintiffs argue, Texas International is "licensed to do business" in Pennsylvania.

■ Plaintiffs' argument misses the mark. The phrase " 'licensed to do business' pertains to a foreign corporation's compliance with the rules and regulations of a state in order that it may have the privilege of transacting business therein." *Buy–4–Less Drug System, Inc. v. American Distilling Co.,* 207 F.Supp. 391, 392 (D.Col. 1962). Thus, in deciding whether a corporation is "licensed to do business," it is generally not determinative that the corporation has received some authority from a federal regulatory agency to engage in a business–related activity within the judicial district in question. In the generality of cases, it is the corporation's compliance with state licensing mechanisms that controls the application of the licensing clause of § 1391(c). But see *Central Rigging and Contracting Corporation of Conn. v. J. E. Miller Transfer and Storage Company,* 199 F.Supp. 40

---

**3.** Defendant does list a toll–free long–distance telephone number in the Philadelphia telephone directory.

(W.D.Pa.1961) (certificate of authority from Interstate Commerce Commission to do interstate business in judicial district); *Masterson v. First Federal Savings & Loan Ass'n of Tarrington*, 53 F.R.D. 313 (E.D.N.Y.1971) (considering the effect of certain federal authorization).

■■■■ To be sure, federal licensing may constitute some evidence of whether a corporation is in fact "doing business" for purposes of § 1391(c). There may be room for debate whether the standards for determining if a corporation is "doing business" are supplied by state, or federal, law. See 1 Moore ¶ .143[5.–1–3] at 1409–1413; *Remington Rand, Inc. v. Knapp–Monarch Co.*, 139 F.Supp. 613 (E.D.Pa.1956) ("doing business" is not dependent on the licensing standards of the state in question, but on the application of a uniform federal standard: whether the corporation's business is so localized "that some state would probably require the foreign corporation to be licensed as a condition precedent to doing that business"). But it is, in any event, clear that federal authorization to establish air service to this judicial district does not constitute "doing business" here, when, as is the fact in this instance, the authorized service has never been instituted.

### Where all plaintiffs reside

Defendant does not deny that the limited partnerships which are the lessors under the agreements that are the subject of this lawsuit have their principal places of business in Media and hence are residents of the Eastern District of Pennsylvania. Defendant relies instead on the principle that if the partnership lacks the capacity, under state law, to sue as an entity, then it is the residence of the named individual partners, and not the residence of the partnership, that controls the application of 28 U.S.C.

§ 1391(a). 1 Moore ¶ .142[5.–1–4] at 1420. Plaintiffs' complaint identifies one general partner of each limited partnership as a non–resident of Pennsylvania.

Plaintiffs do not dispute defendant's statement of the applicable rule. Plaintiffs rely on Pennsylvania Rule of Civil Procedure 2128 as granting these partnerships the capacity to sue. That rule provides that "[a]n action against a partnership may be prosecuted . . . against that partnership in its firm name." And *Darby v. Philadelphia Transp. Co.*, 73 F.Supp. 522 (E.D.Pa.1947), relied on this statutory recognition of the partnership as a jural entity in permitting a defendant–partnership to be sued in the district which was its principal place of business.

■■■■ But while Pa.R.Civ.Pro. 2128(a) allows suits to be brought against a partnership in the partnership name, Pa.R.Civ.Pro. 2127(a) mandates that the prosecution of a partnership suit be in the name of the individual members trading as the firm.[4] Indeed, plaintiffs here have captioned this action in accordance with the latter provision. Because not all of the general partners of any of the partnerships are residents of Pennsylvania, plaintiffs' residence offers no proper basis for venue in this case.[5]

### Where the claim arose

■■■■ Although there is some controversy about whether Section 1391(a)'s prescription of venue in the district where "the claim arose" requires district courts to proceed upon "the occasionally fictive assumption that a claim may arise in only one district," *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), it is clear that, with the possible exception of certain suits which

---

**4.** "A partnership having a right of action shall prosecute such right in the names of the then partners trading in the firm name in the following manner: 'A, B and C trading as X & Co.' "

**5.** Defendant asserts that plaintiffs have not complied with the Pennsylvania Fictitious Names Act, 54 P.S. § 28.1 *et seq.* But they have registered under the Pennsylvania Limited

Partnership Act 59 P.S. § 172 and it is not alleged that they have done business under the partnership name without alerting consumers to the identities of the general partners. Thus, defendant's motion to dismiss for lack of capacity to sue under Pennsylvania law is without merit.

encompass acts within foreign countries, for the purpose of Section 1391(a), there is *at least one* judicial district within which each case can be said to arise. Thus, one viable approach to the problem of laying venue under this provision is to determine "whether, in comparison with other possible forums, the most significant contacts underlying the cause of action took place here." *B. J. McAdams, Inc. v. Boggs*, 426 F.Supp. 1091 (E.D.Pa.1977).

■ Many of the same considerations which are persuasive that there is jurisdiction *in personam* over the defendant also weigh in favor of finding that this district is a proper venue. As noted, the initial negotiations towards the lease agreements occurred here, and payments under those agreements were sent here. But, perhaps more significantly for venue purposes than for personal jurisdiction purposes, Philadelphia, or at least its immediate environs, was assigned as the place where the principal matter of performance in question here–defendant's obligation to return the planes to "any airport within 150 air miles of Philadelphia" which plaintiffs designated–was to have occurred.[6] See *Gardner Engineering Corp. v. Page Engineering Co.*, 484 F.2d 27, 33 (8th Cir. 1973) (place of performance) 1 Moore ¶ .142[5.–2] at 1435 (suggesting that, in contract actions, the choice of the district in which the contract was to be performed is a better "mechanical rule" than the choice of the district in which the contract was made). *Cf. Finance America Credit Corp. v. Kruse Classic Auction Company,*

*Inc.*, 428 F.Supp. 135 (E.D.Pa.1977) (relying on state choice–of–law rules to hold that a cause of action arises where payment is to be made[7]).

Defendant notes that plaintiffs' complaint centers on alleged failures to maintain and repair the aircraft, and defendant implies that the required maintenance was (or, accepting plaintiffs' view, was not) performed in the Southern District of Texas. Defendant also notes plaintiffs' assertion that the planes were abandoned in Arizona, and that this abandonment lies at the heart of plaintiffs' claim. Yet the lease agreements themselves made *no recommendation* as to where maintenance should have been performed. This was apparently left to defendant's discretion. And in regard to the abandonment of the planes in Arizona as providing an appropriate locus for this action, it is quite inconsistent with the purposes of Section 1391(a) to permit a party, by selecting the site for those unilateral actions whose reverberations will make them a breach of contract, to thereby limit the forums available to the aggrieved party. See *Gardner Engineering Corp. v. Page Engineering Co., supra,* ("Venue at the place of repudiation . . . would often result only in convenience to the repudiator and not the aggrieved party)."

■ Defendant has offered no candidate more likely than the Eastern District of Pennsylvania as the district in which the claim arose.[8] Venue is thus properly laid here.

---

**6.** Defendant notes that the radius of 150 air miles from Philadelphia includes twelve federal judicial districts within its compass. But, wholly apart from the mathematical likelihood that the airport chosen would have been within this district, it is clear that, at the very least, the return was to be made to a place geographically convenient to the Philadelphia lessors.

**7.** *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), makes clear that locating that district in which a claim may be said to arise, poses a question to be resolved under federal, rather than state, law. This does not mean, however, that the familiar principles encompassed under the rubric of "where the claim arose," developed in connection with choice–of–law problems, have

no application to the venue–determining process. *Leroy* implies only that those principles will not be controlling.

**8.** Relying on *Leroy v. Great Western United Corporation, supra,* Texas International asserts that the convenience of the defendant (but not the plaintiffs) may properly be considered in laying venue "where the claim arose." To be sure, *Leroy* suggested that the convenience of witnesses and the defendant ("but not the plaintiff") may be considered in assigning the locus of the claim for venue purposes–but only "in the unusual case in which it is not clear that the claim arose in only one specific district." 99 S.Ct. at 2718. That is not the situation here, where a more traditional analysis

## V.

### MOTION TO TRANSFER UNDER § 1404(c)

Having gone this far—over the road of subject–matter jurisdiction, personal jurisdiction, and venue—and having determined that the jurisdictional requisites to maintaining this action in the Eastern District of Pennsylvania have been met, it remains to be determined whether this case should, "for the convenience of parties and witnesses, in the interest of justice," be transferred to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a).[9]

In support of transfer, defendant notes that this action might have been brought in the Southern District of Texas, where defendant resides. And by way of affidavit defendant states that witnesses and documents relating to the maintenance and condition of the aircraft are located in Houston. Defendant identifies three such likely witnesses. Defendant's affidavit further asserts that, to the extent plaintiffs' complaint raises issues involving the storage of the aircraft in the Arizona desert, defendant may wish to join as third–party defendant an entity, called AAPCO, Inc., which had contracted with Texas International to store the aircraft. Moreover, the planes themselves apparently remain in the Arizona desert, considerably nearer Texas than Pennsylvania.

Plaintiffs do not contest the presence of the aircraft, witnesses, and documents nearer the Texas forum. Nor do

plaintiffs state that there are witnesses or documents in Philadelphia relevant to this litigation. They do note that the leases were negotiated in Pennsylvania. While this was a factor of some considerable significance in establishing that there exist those minimal affiliations and contacts by virtue of which a Pennsylvania forum might obtain personal jurisdiction over defendant, the negotiations do not appear to have much significance with respect to the questions which seem likely to be the focus of this litigation. The place of negotiation bears little current relationship to the convenience of the parties and the witnesses and thus does not weigh significantly in favor of sustaining venue here.

Plaintiffs do state that the documents and the planes remain in or near Texas only because of defendant's failure to return the aircraft and documents to Philadelphia at the end of the lease term. Texas International should not be "rewarded," so plaintiffs argue, by being permitted to use its breach to secure transfer of the case to Texas.

Section 1404(a) authorizes a court to take into account the convenience of both parties to the litigation. The defendant's convenience, and the convenience of witnesses, cannot be disregarded merely because it is alleged in plaintiffs' complaint that defendant is a wrongdoer, or even that plaintiffs have presented a *prima facie* case of wrongdoing. Whether the presence of the aircraft in Arizona, with the records nearby, is indeed wrongful, is a matter for

---

points clearly to one district as the place where the claim arose.

Moreover, in *Leroy*, the Court was concerned with Section 1391(b), which does not allow venue in the district where all plaintiffs reside. Thus, it was reasonable for the Court to infer that Congress did not wish plaintiffs' convenience to be a factor in making venue decisions under that section. Section 1391(a), with which we are concerned in this case, allows venue both where all defendants, and where all plaintiffs, reside. Thus, the convenience of both sides would be properly considered for a § 1391(a) balancing. In this case, as noted below, the balance of relative convenience between defendant and plaintiffs suggests the venue of defendant's choice.

**9.** In view of the disposition of the § 1404(a) motion, it may be wondered why so many words have been devoted to the disposition of the personal jurisdiction and venue defenses. Cf. *United States v. Berkowitz*, 328 F.2d 358 (3d Cir. 1964) (district court possesses power to transfer despite lack of jurisdiction over defendant). Suffice it that for the sake of completeness of the record on a possible appeal, and indeed, with some sense of the traditional ordering of jurisdictional priorities, if those questions are amenable to resolution before considering a motion to transfer, they appear appropriately resolved at that time.

litigation on the merits. In the disposition of a § 1404(a) motion the parties are entitled to equal respect from the court.

▮▮▮▮▮ Although a plaintiff's choice of forum should not be lightly disturbed, *Shutte v. Armco Steel Corporation*, 431 F.2d 22 (3d Cir. 1970), that choice is of lesser weight where the chosen forum is not the plaintiff's place of residence. *Newfield v. Nicholson File Company*, 210 F.Supp. 796 (E.D.Pa.1962). Although the limited partnership entities which are parties to the lease agreements are described as having their principal place of business here, only one–half of the general partners and very few of the many limited partners reside here. Considering the circumstances which militate strongly in favor of transfer–defendant's corresponding convenience, the presence of witnesses, documents, and the aircraft which are the subject matter of the leases, and the ability to implead a potential third–party defendant in the transferee district–and juxtaposing those considerations with plaintiffs' failure to offer "an important, legally cognizable stake in his choice of the Pennsylvania federal court as the forum for this action," [10] *Biggers v. Borden, Inc.*, 475 F.Supp. 333, 337 (E.D.Pa.1979), it appears that defendant's motion to transfer this case to the Southern District of Texas should be granted.

### VI.

On pain of dismissal if they fail to comply or to show good cause for non–compliance, plaintiffs will be directed to submit an amended complaint, properly invoking this court's diversity jurisdiction, within five days of the filing date of this memorandum and the accompanying order. Entry of an order transferring this case will be deferred until the amended complaint is submitted. The order of transfer will then be stayed for twenty days, during which time plain-

---

tiffs may decide if they wish to take an appeal. Local Rule Civ.Pro. 31.

### ON MOTION TO REARGUE

1. Plaintiffs have filed an amended complaint pursuant to my order of September 24, 1980. The jurisdictional allegations, while not highly informative with respect to the supporting facts, do encompass the essential legal conclusion of complete diversity of citizenship between all parties plaintiff and defendant. Compare *Cameron v. Hodges*, 127 U.S. 322 (1888). Accordingly, defendant's motion to dismiss for lack of subject–matter jurisdiction is DENIED.

2. As explained in my memorandum–opinion of September 24, 1980, I concluded that this case, if jurisdiction existed, should be transferred to the Southern District of Texas. Plaintiffs' motion to reargue this issue does not persuade me that my intended course of action was inappropriate. Accordingly, the motion for reargument is DENIED, and it is

ORDERED that this case be transferred to the Southern District of Texas.

---

**10.** Although plaintiffs have not noted it in this context, the lease agreements state that Pennsylvania law shall control. While the facility of the transferor and transferee courts with the applicable law is a factor appropriately considered in resolving a § 1404(a) motion, *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11

L.Ed.2d 945 (1964), there seems to be no ground for supposing that in this litigation the district court in Texas will have any more difficulty than this court in applying Pennsylvania law (if indeed that is the appropriate law under Pennsylvania choice–of–law rules) to the facts of this case.