**LUCA OIL DRILLING CO., INC., Plaintiff,**

v.

**GULF OIL CORPORATION, Defendant.**

**Civ. A. No. 84–1027.**

United States District Court, W.D. Pennsylvania.

Sept. 21, 1984.

Edwin Beachler, McArdle, Caroselli, Spagnolli & Beachler, Pittsburgh, Pa., for plaintiff.

William Bowman, Pittsburgh, Pa., John P. Howe, Randall S. Henderson, Houston, Tex., for defendant.

## OPINION

COHILL, District Judge.

Presently before the Court is Defendant's Motion to Transfer this action, pursuant to 28 U.S.C. § 1404(a), to the Western District of Texas, Midland Division.

The dispute between the parties arises out of alleged oral promises made by the Defendant in connection with a drilling contract. The Plaintiff, Luca Oil Drilling Co., Inc. ("Luca"), is a Texas corporation with its principal place of business in Odessa, Texas. Defendant, Gulf Oil Corporation ("Gulf"), is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania. Gulf also maintains offices and does business throughout the United States.

The Complaint alleges that, in or about May, 1981, Luca was established for the exclusive purpose of drilling oil wells for Gulf, in Texas. Luca and Gulf entered into a "Master Rotary Contract" (the "contract") whereby Luca agreed to drill, complete, work over, or deepen wells, according to Gulf's instructions. Complaint, ¶ 5. Luca purchased a "rig" and drilled exclusively for Gulf during the first year of the contract.

The Complaint alleges that, in September, 1982, Gulf, through its regional supervisor, requested that Luca purchase another rig, assuring Luca that there would be enough work to justify the purchase. Luca alleges that it later purchased a third rig

based on similar assurances from Gulf's regional supervisor.

The gravamen of the Complaint is that, beginning in January 1984, Gulf allegedly stopped providing Luca with work, notwithstanding its past assurances and inducements. *Id.* ¶ 16. Luca demands damages for breach of contract, an injunction prohibiting Gulf from cancelling or further interfering with the contract or assurances, and an order directing Gulf to perform the contract.

Gulf has filed an answer denying that it made any assurances and counterclaiming that Luca breached the contract in failing to pay for labor and supplies, and, as a result of this failure, allowing liens and other charges to be filed against Gulf leases, wells, and other property in Texas.

*Transfer*

■ Section 1404(a) provides: "For the convenience of the parties and the witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Caselaw imposes a balancing test weighing competing private interests and public interests. *Mowrey v. Johnson & Johnson*, 524 F.Supp. 771, 775 (W.D.Pa.1981). The factors to be considered are: ease of access to sources of proof; convenience of the parties; convenience of the witnesses; availability of compulsory process; "public interest" factors (including relative congestion of court dockets, choice of law considerations, and the relation of the community in which the courts and jurors are required to serve to the occurrences that give rise to the litigation); and interests of justice. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–509, 67 S.Ct. 839, 843–844, 91 L.Ed. 1055 (1947); *Flintkote Co. v. Allis-Chalmers Corp.*, 73 F.R.D. 463 (S.D.N.Y.1977). Convenience of counsel is not a factor to be considered. *Bolton v. Tesoro Petroleum Corp.*, 549 F.Supp. 1312, 1315 (E.D.Pa. 1982) (*citing Solomon v. Continental Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973)); *Weinberger v. Retail Credit Co.*, 345 F.Supp. 165, 168 (E.D.Pa.1972). In applying the factors cited above, each case must be decided according to its own particular circumstances. *Bartolacci v. Corporation of the Presiding Bishop*, 476 F.Supp. 381, 383 (E.D.Pa.1979).

■ While Plaintiff's initial choice of forum is usually entitled to paramount consideration, *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir.1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971); *Micheel v. Haralson*, 586 F.Supp. 169, 172 (E.D.Pa.1983) exceptions to this general rule are recognized where necessary to preserve the purpose of § 1404(a). *Bartolacci, supra,* at 383. Exceptions arise where none of the conduct complained of occurred in plaintiff's selected forum, *id.,* or where the chosen forum is not plaintiff's place of residence. *Haeberle v. Texas Int'l Airlines*, 497 F.Supp. 1294, 1304 (E.D. Pa.1980) (*citing Newfield v. Nicholson File Co.*, 210 F.Supp. 796 (E.D.Pa.1962)).

Initially, this Court must make a determination as to whether this case could have been brought in the Western District of Texas. We have little difficulty in making such a finding; jurisdiction exists pursuant to 28 U.S.C. § 1332 by reason of the fact that the parties are citizens of different states and the fact that the amount in controversy exceeds $10,000. Venue is proper pursuant to 28 U.S.C. § 1391(c) since Gulf does business in the Western District of Texas. *See Webb Research Corp. v. Rockland Indus., Inc.*, 580 F.Supp. 990, 993 (E.D.Pa.1983).

■ The Court must next weigh the relevant factors, determining, in its discretion, if the convenience of the parties and witnesses, together with the interests of justice, require transfer. *Solomon v. Continental Am. Life Ins. Co.*, 472 F.2d 1043, 1045–46 (3d Cir.1973); *Omni Exploration, Inc. v. Graham Engineering Corp.*, 562 F.Supp. 449, 455 (E.D.Pa.1983). The moving party bears the burden of showing that a balancing of the interests weighs in favor of transfer. Unless the balancing weighs strongly in favor of the defendant, as before stated, the plaintiff's choice should not

be disturbed. *Shutte, supra,* at 25. Courts will decline to transfer where doing so merely shifts the burden of trial in a distant forum from defendant to plaintiff. *Kawecki v. Berylco Indus., Inc. v. Fansteel, Inc.,* 512 F.Supp. 984, 986 (E.D.Pa. 1981), *aff'd,* 676 F.2d 686 (3d Cir.1982).

Gulf argues that transfer of this action is justified for several reasons: 1) Plaintiff is a West Texas drilling contractor with its principal place of business in Odessa, Texas, and, therefore, will not be inconvenienced by the transfer; 2) the facts of the case relate to Texas and the Western District of Texas in that the actions complained of are those of Gulf's Southwest Area office, also headquartered in Odessa, Texas; 3) the contract was negotiated, executed, and performed in the Western District of Texas; 4) all witnesses are located in Texas; and 5) Texas law will be applied under either state's choice of law rules.

In contrast, Plaintiff argues that 1) its choice of forum should be given deference; 2) that Frank Luca, the President of Luca Oil, has many contacts with Pennsylvania: he is officer of ten Pennsylvania corporations, he maintains a corporate headquarters in Wilkes-Barre, Pa., from which several telephone conversations took place with Mr. Blakely in Texas; 3) the only defense witnesses will be two Gulf representatives from Texas and all Plaintiff's witnesses will be available for trial in Pennsylvania; 4) copies of any relevant documents should be available at Gulf's corporate headquarters in Pittsburgh; 5) Pennsylvania law may apply since several telephone conversations allegedly took place between Texas and Pennsylvania; 6) because of Mr. Luca's numerous activities in Pennsylvania, Plaintiff would be inconvenienced by the transfer; and 7) Gulf can better afford the inconvenience of litigating in Pennsylvania than can Plaintiff in Texas.

Both Plaintiff and Defendant submitted affidavits in support of their arguments. Gulf submitted the affidavit of one B.J. Blakely, the Area Drilling Superintendent of the Southwest Area, Western Division, Gulf Oil Exploration & Production Co., a division of Gulf Oil Corporation. Mr. Blakely attested to the fact that Gulf's Southwest Area headquarters are currently located in Odessa, Texas, and that at the time the contract with Luca was signed, the Area office was located approximately 30 miles from Odessa. Blakely Affidavit, at 2. Mr. Blakely stated that the contract was negotiated wholly within the state of Texas, executed by a Gulf Production Manager in Texas, mailed to a Luca representative in Pilot Point, Texas, and received back from Luca. *Id.* at 3. The affidavit states that all drilling by Luca was wholly performed in Texas, that the majority of Gulf officials who dealt with Luca are located in West Texas, and that no Gulf employees who dealt with Luca are located in Pennsylvania. Mr. Blakely states that representatives of subcontractors who would be possible witnesses in Gulf's counterclaim against Luca are located in Texas and would not, in Mr. Blakely's opinion, voluntarily travel to Pittsburgh. Finally, the affidavit states that all Gulf documents relating to the lawsuit are located in Texas.

Plaintiff has responded with affidavits from its President and two Directors. The affidavit of Ernest Etoll, a Luca Director and New York resident, states that Mr. Etoll was present at a dinner meeting between Mr. Blakely and Mr. Luca in Mr. Luca's apartment in Odessa, Texas where assurances were allegedly made concerning the work Gulf would supply to Luca.

The affidavit of Phillip Straub, a Luca Director and Pennsylvania resident, states that Mr. Straub went to Texas on several occasions, met Mr. Blakely, and heard conversations between Luca and Blakely in which Blakely gave assurances to Mr. Luca. The affidavit does not state where these conversations took place.

The affidavit of Mr. Luca, President of Luca Oil and a Florida resident, states that he had conversations with Mr. Blakely and one Mr. Gardner, also from Gulf, who both made assurances to Mr. Luca. The affidavit does not state where these conversations took place. Mr. Luca also attests to

his many contacts with the state of Pennsylvania, and to the fact that he operates ten Pennsylvania corporations from an office in Wilkes-Barre, Pennsylvania. Finally, the affidavit states that Mr. Luca, while in Wilkes-Barre,

> had occassion (sic) ... to have telephone conversations with Mr. Blakely of Gulf relative to various drilling contracts which we either negotiated for and obtained or which we were looking for during the passage of time. Many of these calls were generated on the basis of work promises and the assurances given ... [t]he amount of calls I do not recall in specific number but there certainly were a few while in Pennsylvania dealing with the work to be covered and the assurances given that the work would continue.

Luca Affidavit, at 2–3.

■ In weighing the factors set forth earlier, we believe that the availability and convenience of parties and witnesses, access to sources of proof, and lack of any apparent connection between this forum and the transactions in question are the determinative elements in our decision to grant Defendant's motion to transfer. The Plaintiff is a Texas corporation which operates exclusively in Texas. The contract negotiations and actual work were carried out exclusively in Texas. Both Defendant's employees, Blakely and Gardner, who allegedly made the assurances, are located in Texas. According to the affidavit of Mr. Etoll, one conversation in which assurances were allegedly made occurred in Texas. We do not believe that the affidavits of Mr. Luca or Mr. Straub clearly identify where any conversations attested to in those affidavits took place. Defendant has stated that the relevant documentary evidence is located in Texas; Plaintiff has only argued that copies of these documents should be in Pittsburgh. Since much of the controversy seems to concern alleged oral assurances, we do not feel this factor militates strongly for either side.

Plaintiff's opposition to transfer seems to be based on the convenience of Mr. Luca. Yet Mr. Luca, who is not the Plaintiff in this case, is a Florida resident with business activities in both Texas and Pennsylvania. Mr. Luca would have to travel to either forum in this case, and we find it difficult to see why Texas is more inconvenient. Of Plaintiff's other possible witnesses, Mr. Etoll resides in New York and Mr. Straub in Pennsylvania. Plaintiff's Comptroller, Paula Buck, resides in Texas as do Heinz Huhn, who signed the contract on behalf of Luca, and Mr. McGee, who initiated contact with Gulf on behalf of Luca. Although Mr. Luca has attested that various telephone conversations took place between Texas and Pennsylvania, we do not believe that the substance of these conversations was clearly set forth as relating specifically to the issues in this lawsuit, nor are we willing, on this basis, to retain this case.

Finally, we believe that in applying Pennsylvania choice of law rules, Texas law will most likely govern this case. *See Cipolla v. Shaposka*, 439 Pa. 563, 565, 267 A.2d 854, 855 (1970). Virtually all, if not all, of the contacts are with the state of Texas, and we believe that Texas has a significant interest in protecting the contractual rights of its own corporations against alleged breaches by nonresident defendants.

In sum, we believe that virtually no nexus exists between this forum and the parties or transactions at issue. While plaintiffs have the choice of litigating in many forums, that choice is subject to the Court's authority to transfer under the proper circumstances. As the Supreme Court stated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947):

> Jury duty is a burden that ought not to be imposed on the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home.

330 U.S. at 508–09, 67 S.Ct. at 843.

For the foregoing reasons, Defendant's Motion to Transfer this case to the West-

ern District of Texas, Midland Division, is GRANTED. An appropriate order will follow.